# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RODNEY T. FISHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-16-662-D |
| ) | |
| JOE M. ALLBAUGH, Director; WARDEN ) | |
| T. MCCOLLOUGH; DEPUTY WARDEN ) | |
| JENNY DILLION; and MIKE DUNCAN, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Rodney T. Fisher, appearing *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 alleging violation of his constitutional rights. United States District Judge Timothy D. DeGiusti referred this matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). A review of the complaint has been conducted pursuant to 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2)(B). Based on that review, it is recommended that the Court **DISMISS** the Complaint without prejudice. It is further recommended that the dismissal be counted as a prior occasion or "strike."

**I.  SCREENING REQUIREMENT**

The Court must review each complaint in which a prisoner seeks redress against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The same process is required for civil rights cases challenging conditions of confinement brought by prisoners proceeding *in forma pauperis*. 42 U.S.C. § 1997e(c)(1); 28 U.S.C. § 1915(e)(2). The Court is required to dismiss the complaint or any portion of the

complaint that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1).

## II. NATURE OF THE CASE

Plaintiff identifies Defendant Joe Allbaugh as the Director of the Department of Corrections. Defendant McCollough is identified as the Warden of Lexington Correctional Center, (LCC), Defendant Dillion is identified as the Deputy Warden of LCC, and Defendant Duncan is identified as "Unit Manager." At all times relevant to this action, Plaintiff was incarcerated at LCC. Plaintiff filed this Complaint after he was transferred to the Cimarron Correctional Facility (CCF).

Plaintiff alleges that on November 4, 2015, he suffered a serious head injury, resulting from a physical assault by an inmate identified only as "Moore." Plaintiff complains that Defendants Duncan and Dillion were "made aware" of the unprovoked attack, but neither "took appropriate action or followed policy" to punish Moore. (ECF No. 1:2). Plaintiff was especially aggrieved because Defendant Duncan allowed Moore "to sign a waiver of prosecution." Plaintiff states Defendant Duncan did this "favor" for Moore because Moore is "one of [Defendant Duncan's] white Arian Supporters." According to Plaintiff, Defendant Duncan favors such inmates and grants them favors and leniency. (*Id.*).

The next day, according to Plaintiff, other inmates attacked Moore. Plaintiff denies taking part in the attack and claims he merely watched. (ECF No. 1-1:1). But when Defendant Duncan learned of the attack on Moore, he detained Plaintiff in

"lockup," stating, "'I will have both you and Muhammad shipped." (*Id.*). According to Plaintiff, Defendant Duncan's statement threatened Plaintiff's religious beliefs in some unidentified way. (*Id.*).

Defendant Duncan then allegedly threatened the inmate identified as "Muhammad" and "forced [Muhammad] to write a false statement," presumably indicating Plaintiff had been involved in the attack on Moore. Thereafter, Defendant Duncan "proceeded to shake down [Plaintiff's] cell" and "purposely threw away alot [sic] of [Plaintiff's] property" including a prayer rug, shower shoes, head-phones, radio Walkman, 501 jeans, fan, hot pot and more. (*Id.*).

Plaintiff alleges Defendant Duncan had another officer file a false misconduct report against Plaintiff, presumably based on Plaintiff's alleged attack on Moore. But Plaintiff does not allege there was ever a hearing or any negative consequences to him, other than being detained in lockup. He complains only that Defendant Duncan "tried" to convict him based on the "fabricated misconduct." (*Id.*).

According to Plaintiff, an officer identified as "Chief Ramon Jones" knew who was actually involved in the attack on Moore and released Plaintiff "back into Lexington facility yard." (*Id.*). After Plaintiff's release from "lockup," Defendant Duncan allegedly used his influence with Defendant Dillion to have Plaintiff transferred to a private prison. Plaintiff alleges Defendant Duncan knew, or should have known, it is "much harder to do one's legal work" in a private prison and insinuates the transfer was somehow initiated to thwart his unidentified "legal work." (ECF No. 1-1:2).

3

Plaintiff further states that the "Medill Justice Project in Illinois" is investigating his case, and theorizes the transfer may have been "motivated to stop this investigation." But based on Defendant Duncan's alleged "derogatory remarks about Muslims," Plaintiff states Defendant Duncan's main motive was "because he knows [Plaintiff] is a Muslim." (*Id.*).

Plaintiff contends he filed grievance forms and "did all required to exhaust [his] administrative remedies." (ECF No. 1:5-6). He alleges he received no answers and charges that the DOC's failure to answer his grievances denied him his Due Process Rights. (ECF No. 1-1:2).

Finally, Plaintiff states "Duncan, Dillion, and Ms. Ladonna Warrior have demonstrated deliberate indifference to a prisoner's medical injury also in violation of the 8th Amendment." (*Id.*).

### III. STANDARD OF REVIEW

The Court must accept Plaintiff's allegations as true and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to Plaintiff. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). Because Plaintiff is proceeding *pro se*, his complaint must be construed liberally. *See id.* at 1218. The Court "review[s] the complaint for plausibility; that is, to determine whether the complaint includes enough facts to state a claim to relief that is plausible on its face." *Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009) (quotations and citation omitted).

A complaint fails to state such a claim when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the

4

allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted). Bare legal conclusions in a complaint, however, are not assumed to be true; legal conclusions "must be supported by factual allegations" to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV.   ISSUES PRESENTED

Plaintiff states his due process rights and his right to freedom of religion have been violated. These bare legal conclusions do not state claims upon which relief may be granted. But liberally construing Plaintiff's Complaint, this Court has considered Plaintiff's allegations in the portion of the Complaint entitled "Nature of the Case" to determine whether Plaintiff has made sufficient allegations to support any claim of constitutional violations. As discussed in further detail below, however, this Court concludes he has not.

## V.   ANALYSIS

### A.   Claims Against Defendants Allbaugh, McCollough and Dillion Based on Alleged Failure to Answer Grievances

The claims against Defendants Allbaugh and McCollough are limited to allegations regarding the grievance process. Plaintiff also implicates Defendant Dillion in this alleged violation of Due Process:

> I wrote to Deputy Warden Dillion, Warden McCollough, and D.O.C. Director, and informed them all of this entire incident, given [sic] them an opportunity to correct this situation and return my property. I filed the [grievance] forms and [received] no response from any staff, only the Directors Office responded telling me to contact Risk Management Office which I did do, no help. See attached exhibits.

5

(ECF No. 1-1:3). To his Complaint, Plaintiff has attached a letter dated January 11, 2016, addressed to the "Director" containing a recitation of events similar to those recounted in the Complaint. (ECF No. 1-2:2-5). Plaintiff received a response from Greg Williams, Division Manager, indicating the Director had forwarded the correspondence to him for reply. Mr. Williams noted Plaintiff's reference to a grievance having been filed and informed Plaintiff that he needed to "wait until the grievance process is complete before seeking assistance outside of the process." (*Id.* at 1). Also attached to the Complaint are some Request to Staff forms (ECF Nos. 1-3; 1-4); a form notifying Plaintiff that the Warden's Assistant was returning a grievance unanswered for several reasons and informing him he could resubmit the grievance correctly within ten days (ECF No. 1-4); a copy of Plaintiff's Inventory Form (ECF No. 1-5), and a list of items Defendant Duncan allegedly destroyed. (ECF No. 1-6).

Plaintiff has not pled sufficient facts to demonstrate Defendants Allbaugh and McCollough personally participated in any of the incidents that, according to Plaintiff, resulted in the violation of his constitutional rights. To the extent Plaintiff is alleging Defendant Dillion violated his alleged "right" to a grievance procedure, this claim, too, is insufficient.

In a civil rights action, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (vicarious liability is inapplicable to § 1983 suits). Tenth Circuit precedent is consistent with the Supreme Court's holding in *Iqbal*. *See Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisory status

alone does not create § 1983 liability; plaintiff must demonstrate an affirmative link between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise) (citation and quotation omitted).

Plaintiff's bare allegation that "D.O.C. . . . continued to violate [his] Due Process Rights by not answering their grievance process" is insufficient to state a claim of constitutional dimensions. *See Boyd v. Werholtz*, 443 Fed. App'x. 331, 332 (10th Cir. 2011) (*citing Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)). Moreover, "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted).

Plaintiff's contention that his grievances were not answered also fails to state a cognizable claim because "there is no independent constitutional right to state administrative grievance procedures." *Von Hallcy v. Clements*, 519 Fed. App'x. 521, 523, (10th Cir. 2013). "Nor does the state's voluntary provision of an administrative grievance process create a liberty interest in that process." *Boyd*, 443 Fed. App'x. at 332 (10th Cir. 2011) (*citing Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994)). *See also Butler v. Brown*, 58 Fed. App'x. 712 (9th Cir. 2003) ("[A] prisoner has no constitutional right to prison grievance procedures."); *Young v. Gundy*, 30 Fed. App'x. 568, 569–70 (6th Cir. 2002) ("[T]here is no inherent constitutional right to an effective prison grievance procedure."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (same).

Thus, Plaintiff's allegations based on an ineffective grievance system do not state a due process claim. All claims against Defendants Allbaugh and McCollough should be dismissed for failure to state a claim upon which relief may be granted. The due process claim against Defendant Dillion based on the grievance system should also be dismissed for failure to state a claim upon which relief may be granted.

B.  **Remaining Claims Against Defendants Duncan and Dillion**

The remaining claims implicate both Defendants Duncan and Dillion, but most of them are asserted against Duncan alone. In either case Plaintiff has failed to state claims upon which relief may be granted.

1.  **Failure to "Follow Procedure"**

Plaintiff contends that Defendants Duncan and Dillion were made aware that Moore had attacked Plaintiff. Plaintiff objects to the fact that Defendant Duncan did not punish Moore through the prison disciplinary process. Plaintiff postulates that Moore was not disciplined because he is one of Defendant Duncan's "white Arian supporters." But a prison official's decision not to discipline one prisoner for an offense does not violate the constitutional rights of other prisoners, regardless of the official's motive for being lenient.

Even to the extent Plaintiff contrasts Defendant Duncan's treatment of Moore with Defendant Duncan's treatment of Plaintiff in the aftermath of the attack on Moore, Plaintiff still fails to state a claim. He alleges Defendant Duncan's threat to have him and another prisoner transferred somehow affected Plaintiff's religious freedom. He states Defendant Duncan caused another inmate and a different prison official to write

8

false statements and file a false misconduct report respectively. Plaintiff states he was immediately put in the special housing unit and that Defendant Duncan's actions were an attempt to get Plaintiff convicted for misconduct.

Although Plaintiff does not invoke the Equal Protection Clause, the protections of that clause do extend to prisoners. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination). But here, Plaintiff has not alleged sufficient facts to state a claim under the Equal Protection Clause. Regardless of Defendant Duncan's alleged prejudice against Plaintiff, transferring Plaintiff to the Special Housing Unit after the attack on Moore was reasonable, given Moore's attack on Plaintiff the day before. Defendant Duncan acted well within his discretion on both occasions. "[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Sandin v. Conner*, 515 U.S. 472, 482–83 (1995) (internal citations omitted).

Plaintiff has also failed to state sufficient facts to demonstrate his placement in the special housing unit violated his First Amendment right to freedom of religion. This statement with no supporting details is insufficient to state a First Amendment cause of action.

Moreover, Plaintiffs allegations do not state a claim based on the Due Process Clause. Plaintiff ultimately was not convicted of misconduct, did not lose any good time credits, and was released from the Special Housing Unit by an officer who knew Plaintiff was not involved in the attack on Moore. Transfer to the special housing unit alone,

though punitive, does not automatically trigger the protection of the Due Process Clause. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest).

### 2. Destruction of Property

Plaintiff alleges Defendant Duncan destroyed personal property while Plaintiff was housed in the Special Housing Unit. A prison official's intentional deprivation of a prisoner's personal property does not, however, state a due process claim, where, as here, the prisoner has an adequate post-deprivation remedy provided by state law. *See Buchanan v. Oklahoma*, 398 Fed. App'x. 339, 342, (10th Cir. 2010) (even if property-related claims raise due process concerns, unauthorized deprivations of prisoner's property do not violate due process where state post-deprivation remedies are available and Oklahoma law provides such remedies) (*citing Hudson v. Palmer*, 468 U.S. 517, 533 (1984)); Okla. Stat. tit. 12, §§ 1571–71.1 (replevin).

### 3. Transfer and Access to the Courts

Plaintiff alleges Defendant Duncan used his influence to convince Defendant Dillion to transfer Plaintiff to a private prison. Based on his allegation that Defendant Duncan knew or should have known that it is allegedly harder for prisoners to do legal research in private prisons, Plaintiff insinuates that Defendant Duncan sought to transfer Plaintiff to frustrate his access to the courts. These allegations do not state a claim upon which relief may be granted.

First, prisoners have no constitutional right to be housed in any particular correctional institution. *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (Constitution does not guarantee that the convicted prisoner will be placed in any particular prison).

Moreover, Plaintiff has not provided any facts supporting a contention that he was deprived of access to the courts. He could not have been referring to this action because he did not file his Complaint until after his transfer. He has not identified any other action, nor has he alleged sufficient facts to demonstrate he has sustained any actual injury to his Sixth Amendment right to access the courts, a necessary element of such an action. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (inmate cannot establish relevant actual injury simply by establishing that prison's law library or legal assistance program is subpar in some theoretical sense).

### 4. Deliberate Indifference to Serious Medical Needs

Finally, Plaintiff has failed to state an Eighth Amendment claim based on deliberate indifference to his serious medical needs. Plaintiff's bare legal conclusion that Ms. Warrior and Defendants Duncan and Dillion violated his Eighth Amendment rights by being deliberately indifferent to "a prisoner's" medical needs is completely devoid of supporting facts and insufficient to state an Eighth Amendment claim. Moreover, Ms. Warrior is not named as a defendant in this case.

### RECOMMENDATION

In sum, none of the allegations presented in Plaintiff's Complaint states a constitutional claim upon which relief may be granted. It is recommended that Plaintiff's Complaint (ECF No. 1) be **DISMISSED** without prejudice for failure to state a claim

upon which relief may be granted. It is further recommended that this dismissal be counted as a strike pursuant to 28 U.S.C. § 1915(g).

## NOTICE OF RIGHT TO OBJECT

Plaintiff is hereby advised of his right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by **October 3, 2016.** *See* 28 U.S.C. § 636(b)(1); and Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF THE REFERRAL

This Report and Recommendation terminates the referral to the undersigned Magistrate Judge in the captioned matter.

ENTERED on September 14, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE